**Robert H. SHECKLEY, Plaintiff**

v.

**LINCOLN NATIONAL CORPORATION EMPLOYEES' RETIREMENT PLAN, et al., Defendants**

**No. CIV.04–109–P–C.**

United States District Court, D. Maine.

Feb. 17, 2005.

---

Randall B. Weill, Gregory Paul Hansel, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for Robert Sheckley on behalf of himself and all other persons similarly situated, Plaintiff.

Kenneth Salinger, Sean Becker, Palmer & Dodge, Boston, MA, Peter J. Brann, Matthew P. Schaefer, Brann & Isaacson, Lewiston, ME, for Defendants.

## MEMORANDUM OF DECISION AND ORDER ADOPTING IN PART THE MAGISTRATE JUDGE'S RECOMMENDED DECISION AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

GENE CARTER, Senior District Judge.

The United States Magistrate Judge filed with the Court on December 15, 2004, his Recommended Decision on Defendants' Motions to Dismiss (Docket Item No. 39). Plaintiff filed his objections thereto on January 3, 2005 (Docket Item No. 42), to which Defendants filed their responses on January 21, 2005 (Docket Item Nos. 44 and 45). This Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record, and, having made a de novo determination of the matters adjudicated by the Magistrate Judge's Recommended Decision, adopts his recommendations with respect to Counts I and II and declines to adopt his recommendation with respect to Count III.

All of the named defendants in this action arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., move to dismiss the Amended Complaint in two motions. The first of the two motions is brought by Defendants Lincoln National Corporation, Lincoln National Life Insurance Company,

First Penn–Pacific Life Insurance Company, Lincoln Life and Annuity Distributors, Inc., Lincoln Life and Annuity Company of New York, Lincoln National Financial Institutions Group, Inc., Lincoln National Investments, Inc., Lincoln National Investment Companies, Inc., and Lincoln Financial Distributors, Inc., whom the Court will collectively refer to as the "Employer Defendants." [1] The second motion is brought by the remaining Defendants, Lincoln National Corporation Employees Retirement Plan, Lincoln National Corporation Benefits Committee, and Lincoln National Corporation Benefits Appeals and Operations Committee, whom the Court will collectively refer to as the "Plan Defendants."

## I. Legal Standards for Motion to Dismiss

The Employer Defendants' motion invokes Fed.R.Civ.P. 12(b)(1), (b)(2) and (b)(6). Employers' Motion at 1. The Plan Defendants' motion invokes only Rule 12(b)(6). Plan Defendants' Motion at 1. When a defendant moves to dismiss pursuant to Rule 12(b)(1), the plaintiff has the burden of demonstrating that the court has jurisdiction over the subject matter. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir.1991); *Lord v. Casco Bay Weekly, Inc.*, 789 F.Supp. 32, 33 (D.Me.1992). The court does not draw inferences favorable to the pleader. *Hodgdon v. United States*, 919 F.Supp. 37, 38 (D.Me.1996). For the purposes of a motion to dismiss under Rule 12(b)(1) only, the moving party may use affidavits and other matter to support the motion. The plaintiff may also establish the actual existence of subject-matter jurisdiction through extra-pleading material. 5A C. Wright & A. Miller, Federal Practice and

Procedure § 1350 at 213 (2d ed.1990); *see also Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 699 (1st Cir.1979) (question of jurisdiction decided on basis of answers to interrogatories, deposition statements and an affidavit).

A motion to dismiss for lack of personal jurisdiction, governed by Rule 12(b)(2), raises the question whether a defendant has "purposefully established minimum contacts in the forum State." *Hancock v. Delta Air Lines, Inc.*, 793 F.Supp. 366, 367 (D.Me.1992) (citation and internal quotation marks omitted). The plaintiff bears the burden of establishing jurisdiction; however, where the court rules on a Rule 12(b)(2) motion without holding an evidentiary hearing, a prima facie showing suffices. *Archibald v. Archibald*, 826 F.Supp. 26, 28 (D.Me.1993). Such a showing requires more than mere reference to unsupported allegations in the plaintiff's pleadings. *Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir.1992). However, for purposes of considering a Rule 12(b)(2) motion, the court will accept properly supported proffers of evidence as true. *Id.*

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." In addressing the motion to dismiss, the Court must take as true the well-pleaded facts as they appear in the complaint, and give Plaintiff the benefit of every reasonable inference in his favor. *Medina–Claudio v. Rodriguez–Mateo*, 292 F.3d 31, 34 (1st Cir.2002). A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2

---

1. With the exception of Lincoln National Corporation itself, Plaintiff describes the Employer Defendants as subsidiaries or affiliates of Lincoln National Corporation. First Amended Complaint ¶ 21; *see also* Corporate Disclosure Statement.

L.Ed.2d 80 (1957); *accord Medina–Claudio,* 292 F.3d at 34.

## II.  Factual Background

The First Amended Complaint in this putative class action includes the following relevant factual allegations.  Plaintiff, a resident of Maine, was employed by Defendant Lincoln National Life Insurance Company between August 14, 2000, and August 9, 2002, in its information technology department.  First Amended Class Action Complaint ("Complaint") (Docket No. 3) ¶¶ 4, 46.  Defendant Lincoln National Corporation Employees Retirement Plan (the "Plan") is an employee pension benefit plan as that term is defined in ERISA. *Id.* ¶ 5. Plaintiff was a participant in the Plan. *Id.* ¶ 4. Defendant Lincoln National Corporation Benefits Committee is the plan administrator.  *Id.* ¶ 6. Defendant Lincoln National Corporation Benefits Appeals and Operations Committee is the claims fiduciary for the Plan. *Id.* ¶ 7. Defendant Lincoln National Corporation is the Plan sponsor.  *Id.* ¶ 8. The other named Defendants have participated in the Plan as employers. *Id.* ¶ 22.  Employees of participating employers become participants in the plan upon their date of hire. *Id.* ¶ 21.  When an employee leaves that employment, he or she can receive the vested balance of his or her account in the Plan. *Id.* ¶ 23. In 2002, Lincoln National Corporation reorganized its information technology organization, and as a result, forty-nine positions were eliminated. *Id.* ¶ 32.  In the course of various restructurings, Lincoln National Corporation entered into outsourcing agreements. *Id.* ¶ 39. Outsourcing is the practice of transferring job functions to third-party vendors who enter into contracts with the employer to provide the services formerly provided by employees. *Id.* ¶ 40.

In April 2002, Lincoln National Corporation notified 26 employees in the information technology department at Lincoln National Life Insurance Company, including Plaintiff, that their positions were being outsourced to Computer Sciences Corporation (CSC). *Id.* ¶¶ 42, 47.  Outsourced employees were required to apply to CSC for a position. *Id.* ¶ 47.  Plaintiff applied to CSC and was offered employment on June 27, 2002. *Id.* ¶ 50.  Plaintiff was subsequently given a summary of his benefits information which stated, *inter alia,* that he was not entitled to severance pay under the circumstances and, with respect to his retirement benefits: "Vested Benefit.  You are entitled to benefits under this Plan." *Id.* ¶ 51. CSC hired seventeen of the twenty-six information technology department employees. *Id.* ¶ 53.  After he accepted a position with CSC and despite the information contained in the benefits summary he had been given, Plaintiff was informed by Lincoln National Corporation that his retirement account in the Plan would not vest. *Id.* ¶ 54.  On October 30, 2002, Lincoln National Corporation responded to an inquiry from Plaintiff regarding the benefits summary, stating, *inter alia,* that the summary contained an error about his pension and that his pension was not vested because he had been with Lincoln National Life Insurance Company only since August 14, 2002, and explaining that he was "not job eliminated" but rather "outsourced," so the provision for vesting upon job elimination did not apply. *Id.* ¶ 55. On March 19, 2003, Plaintiff notified Lincoln National Corporation that he was prepared to file a claim for retirement benefits. *Id.* ¶ 56.  By a letter dated June 10, 2003, the Benefits Appeals and Operations Committee notified Plaintiff that his retirement benefit had not vested because his job was "not eliminated (it was outsourced)." *Id.* ¶ 57. This action was filed on May 28, 2004.

## III. Discussion

### A. The Employer Defendants' Motion to Dismiss

#### 1. The Failure to State a Claim Pursuant to Rule 12(b)(6)—Violation of ERISA Section 510 (Count III)

Count III alleges a claim under ERISA § 510 for interference with his rights under the Plan. Section 510 provides that:

[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ....

29 U.S.C. § 1140. In his Recommended Decision the Magistrate Judge found that although the Amended Complaint alleges the necessary intent, the "mischaracterization of the job eliminations affecting Plaintiff and the Class ... cannot reasonably be construed, even under the favorable standard applicable to motions to dismiss, to allege discrimination against [P]laintiff and other members of the putative class." In his objection to the Recommended Decision, Plaintiff disagrees with this conclusion. It is not the actual business decision to eliminate the job internally and/or outsource the work that Plaintiff claims is the basis of his discrimination claim. Rather, it is the characterization of the action taken by the employer Defendants as "outsourcing" (as opposed to "job elimination") that serves as the basis for Plaintiff's discrimination claim under section 1140. *See* 29 U.S.C. § 1140.

Ultimately, in order to establish a violation of section 510, Plaintiff will need to show that the Employer Defendants made the decision to categorize Plaintiff as "outsourced" with the intent to deprive Plaintiff of the benefits that would otherwise be due to him under the terms of the Plan. The Court cannot conclude that it appears to a certainty that Plaintiff would be unable to recover under any set of facts on his section 510 claim. *See Furcini v. Equibank, NA,* 660 F.Supp. 1436, 1439 (W.D.Pa.1987). The allegations in the First Amended Complaint are sufficient to state a section 510 claim. For example, Plaintiff may be able to establish that the employer changed the characterization of its action from "job elimination" to "outsourced" in order to prevent Plaintiff from vesting in the pension plan. Accordingly, the Court declines to adopt the Magistrate Judge's Recommended Decision on Count III.

Except for Lincoln National Life Insurance Company ("LNL"), Plaintiff's former employer, the other Employer Defendants move to dismiss Count III arguing that "Sheckley has made no specific allegation that any of the [Employer] Defendants had any role in wrongfully 'discriminat[ing]' against him "for exercising any right to which he [was] entitled under the [P]lan [or] ... for the purpose of interfering with the purpose of any right to which [he] may [have] become entitled under the [P]lan." Employer Defendants' Motion to Dismiss" (Docket Item No. 29) at 5 (quoting 29 U.S.C. § 1140). Plaintiff responds that because the First Amended Complaint is in the form of a class action, the discrimination claim is not that each of the Employer Defendants discriminated against Sheckley, but rather that each Employer Defendant discriminated against class members. This Court agrees with Plaintiff on this point and will deny the other Employer Defendants' Motion to Dismiss.

**2. The Court Lacks Subject Matter Jurisdiction Pursuant to Rule 12(b)(1)-Violation of ERISA Section 502(a)(1) and 502(a)(3) (Counts I and II)**

Count I alleges wrongful denial of benefits pursuant to ERISA section 502(a)(1) and Count II alleges breach of fiduciary duty pursuant to ERISA section 502(a)(3). The Employer Defendants move to dismiss Counts I and II on the basis that this Court lacks subject matter jurisdiction over the claims because they are not proper Defendants for these types of claims. In his response, Plaintiff states that he did not intend Counts I and II to state claims against the Employer Defendants. The Court will treat Plaintiff as bound by that representation as this case proceeds and, therefore, the Court finds that no action is necessary on Counts I and II based on the subject matter jurisdiction argumentation presented by the Employer Defendants.

**3. The Court Lacks Personal Jurisdiction Pursuant to Rule 12(b)(2)**

■ The Magistrate Judge did not reach this issue. However, it is now necessary for this Court to do so. With the exception of Plaintiff's former employer, LNL, the Employer Defendants argue that the Amended Complaint should be dismissed because the Constitutional "minimum contacts" requirement for personal jurisdiction is not met. Plaintiff responds that when, as here, the Court's "subject-matter jurisdiction rests wholly or in part on the existence of a federal question, the constitutional limits of the court's personal jurisdiction are drawn in the first instance with reference to the due process clause of the fifth amendment," which "permits a federal court to exercise personal jurisdiction over a defendant in a federal question case if that defendant has sufficient contacts with the United States as a whole." *Lorelei Corp. v. County of Guadalupe,* 940 F.2d 717, 719 (1st Cir.1991) (internal quotations and citations omitted). The Employer Defendants do not challenge that they have sufficient contacts with the United States as a whole, therefore, the Court concludes that it has personal jurisdiction over them.

**B. The Plan Defendants' Motion to Dismiss**

**1. The Application of the Plan's Six–Month Limitation Period—Counts I and II**

■ In his Recommended Decision, the Magistrate Judge found that because Plaintiff failed to file his civil action within six months of the June 10, 2003, determination of the Benefits Appeals and Operations Committee, as required by the Plan, Plaintiff's claims against the Plan Defendants are time barred. Plaintiff does not contend that the six-month contractual limitations period in this case is unreasonable on its face, but rather that the Plan did not follow its own terms and applicable federal regulations with respect to the claims process, making it unreasonable to apply the contractual term to Plaintiff under the circumstances.

**a. Claims Procedure in the Summary Plan Description**

The Plan's Summary Plan Description ("SPD") envisions that when application for benefits is made, the claimant will "submit a completed benefit application." Lincoln National Corporation Employees' Retirement Plan Summary Plan Description (Exh. 2 to Employer Defendants' Motion to Dismiss) at 10. Under a section entitled "If Your Claim is Denied" the Plan also provides that

> [a]ll persons making a claim will be notified in writing whether or not the claim will be paid . . . .

If any part of the claim is denied, the notice will explain the specific reason(s) for the denial and will include specific reference to the Plan provision(s) upon which the denial was based. If applicable, the claimant will be given a description of any additional information necessary to process the claim, and an explanation of why such information is necessary and of the steps to be followed to request a review of the decision.

If the claim is denied in whole or in part, the claimant is entitled to:

• Request a review of the decision;

• Review pertinent documents used in the claim determination; and

• Submit any issues and comments in writing.

To request a review [of the denial of a claim for benefits], the claimant must file a written request with the LNC Benefits Appeals and Operations Committee within 60 days of receiving the original claim determination . . . .

A final decision of the review will be made by the LNC Benefits Appeals and Operations Committee . . . .

The decision upon review will be final. It will be communicated in writing and contain the specific reason(s) for the decision, will contain references to the pertinent Plan language upon which the decision was based, and will be written in a manner easily understood by the claimant. Claimants will not be entitled to challenge the LNC Benefits Appeals [and] Operations Committee's determinations in judicial or administrative proceedings without first filing the written request for review and otherwise complying with the claim procedures. If any such judicial or administrative proceeding is undertaken, the evidence presented will be strictly limited to the evidence timely presented to the LNC Benefits Appeals and Operations Committee. In addition, any such judicial or administrative proceeding must be filed within six months after the Committee's final decision.

*Id.* at 11.

Although neither Plaintiff's correspondence that caused Lincoln National to respond on October 30, 2002, nor the Lincoln National October 30, 2002, letter are part of the record, the First Amended Complaint states that "[o]n October 30, 2002, Lincoln National responded to an *inquiry* from Plaintiff Sheckley regarding his benefits summary." First Amended Complaint ¶ 55 (emphasis add). Every request for information from, or inquiry to, a benefits plan is not equivalent to filing a claim for benefits. An inquiry regarding the existence of a benefit is markedly different from filing a claim to receive benefits. The Court finds, on this record, that Plaintiff never applied for benefits anytime before March 19, 2003. First, there is no indication in the record that Plaintiff filed a "benefit application" such as the Plan envisions being necessary to initiate the claims process. Moreover, although the nature of Plaintiff's "inquiry" is not part of the record, it does not appear that on October 30, 2002, the Plan treated Plaintiff's inquiry as filing a claim to receive benefits. Consistent with this conclusion is the fact that in its letter the Plan did not notify Plaintiff of his right to request an administrative review of the decision or the time period within which he must file for such administrative review as required under the terms of the SPD upon the denial of a claim for benefits.

Plaintiff's March 19, 2003, correspondence to Lincoln National does appear to make a claim for benefits, *see* March 19, 2003, e-mail from Robert Sheckley to Kellie Devall at Lincoln National, attached as Exh. A to Plan Defendants' Motion to

Dismiss Reply Memorandum (Docket Item No. 33), and Lincoln National treated as such, *see* Letter from Patricia Harrold, Secretary of the Benefits Appeals and Operations Committee, attached as Exh. 5 to the Plan Defendants' Motion to Dismiss (Docket Item No. 28).[2] By a letter dated June 10, 2003, the Benefits Appeals and Operations Committee notified Plaintiff that his retirement benefit had not vested because his job was not eliminated, rather it was outsourced. Although the Plan clearly envisions a two-step process with an initial benefits determination and the right to an administrative review of that determination, that process was collapsed into a single review by the Benefits Appeals and Operations Committee. The Plan's failure to follow its own procedures can, in some instances, have serious consequences; however, here there is no causal connection between the Plan's failure to follow the claims procedures laid out in the SPD and Plaintiff's failure to file this action until May 28, 2004—after the Plan's six-month limitation period had run.

## b. The Applicable Department of Labor Regulations

In addition to not following the claims procedure laid out in the SPD, the Plan Defendants do not appear to have complied with the federal regulations applicable to the denial of benefits. The Department of Labor Regulations require that all claims procedures be reasonable:

> Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims,

notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collective referred to as claims procedures).

29 C.F.R. § 2560.503–1(b). The Plan's claims procedures will be deemed to be reasonable only if:

> the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination ... The notification shall set forth, in a manner calculated to be understood by the claimant—
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review ....

29 C.F.R. § 2560.503–1(g). In the case of an adverse benefit determination on review, the regulations separately require the plan administrator to provide:

> (3) A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other

---

**2.** Ordinarily, in deciding a motion to dismiss, a court may not consider any document outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). There is a narrow exception "for documents the authenticity of which are not

disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.; see also Young v. Lepone,* 305 F.3d 1, 11 (1st Cir.2002). The correspondence of March 19, 2003, and June 10, 2003, are central to Plaintiff's claim and he does not dispute their authenticity.

information relevant to the claimant's claim for benefits . . .; [and]

(4) . . . a statement of the claimant's right to bring an action under section 502(a) of the Act . . . .

29 C.F.R. § 2560.503–1(j). The Magistrate Judge found that "[t]he June 10, 2003 letter cannot reasonably be construed to include '[a] statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits," ' but ultimately concluded that "[t]he requirement that a claimant be notified of his right to have copies of relevant documents has little or no connection to a claimant's right to bring a court action seeking review of the denial of his claim for benefits." Recommended Decision at 10. This Court agrees.

In addition to failing to notify Plaintiff of his right to receive documents, the June 10, 2003, letter from the Benefits Appeals and Operations Committee fails to state that Plaintiff has the right to bring a civil action under section 502(a) of ERISA as required by regulation 2560.503–1(j). Moreover, as discussed above, the omission of the initial benefits determination resulted in Plaintiff never being informed of his right to bring a civil action pursuant to section 502(a) of ERISA as required by regulation 2560.503–1(g). With respect to this deficiency the Magistrate Judge found "the complaint itself makes relatively clear that the plaintiff knew no later than March 19, 2003, before he could have received the June 10, 2003 letter, that he had 'a claim for retirement benefits' that he could pursue in court." Recommended Decision at

11. Although it is not apparent from the First Amended Complaint itself that Plaintiff knew of his right to bring a civil action, the record contains Plaintiff's March 19, 2003, correspondence clearly stating that "I . . . am prepared to file an ERISA claim." March 19, 2003, e-mail from Robert Sheckley to Kellie Devall at Lincoln National attached as Exh. A to Plan Defendants' Motion to Dismiss Reply Memorandum. Therefore, the Court finds that, despite the Plan's failure to comply with federal regulations, Plaintiff was aware of his right to file a civil action before he received the June 10, 2003, letter.[3]

■ Generally, where a plan contains particular policy terms and procedures relating to a participant's right to commence a legal action, the plan must adhere to those basic terms and procedures in order for the plan provision to be triggered. *See, e.g., Mogck v. Unum Life Ins. Co. of Am.*, 292 F.3d 1025, 1028–29 (9th Cir.2002) (holding that a contractual time limitation on commencing legal proceedings under ERISA was not enforceable because the beneficiary was not informed in the claim denial, with the language used in the policy, that the contractual time limitation for legal proceedings would begin to run). Here again the Court notes that the failure to provide a claimant with the required notice can have severe consequences for the Plan. The Court finds, however, that the failure to notify of the ability to obtain documents or of a right to bring a civil action are, in this case, technical violations of the Plan documents and the federal regulations. *See I.V. Servs. of Am., Inc. v. Inn Dev. Mgmt., Inc.*, 182 F.3d 51, 57 (1st Cir.1999). There is no causal connection

---

**3.** Plaintiff also argues that the Plan failed to notify him of the contractual time limit applicable to filing a civil action. The Court notes, however, that the Magistrate Judge properly determined that neither the Summary Plan Description nor the applicable federal regulations require that the Plan's notification of his right to file a civil action include the contractual time period within which such action must be filed.

between the Plan's failure to provide proper notice of Plaintiff's entitlement to receive documents or his right to file a civil action and Plaintiff's failure to file this action until May 28, 2004—after the Plan's six-month limitation period had run. Under these circumstances, it is reasonable to enforce the Plan's six-month limit for filing a civil action based on the Plan's benefits determination. The Court will, therefore, adopt the Recommendation of the Magistrate Judge on the application of the Plan's contractual limitations period and, as a result, the Plan Defendants' Motion to Dismiss Counts I and II will be granted.

**2. The Failure to State a Claim Pursuant to Rule 12(b)(6)—Violation of ERISA Section 510 (Count III)**

Finally, the Plan Defendants argue that Count III should be dismissed against them for essentially the same reasons that the Employer Defendants assert. After thoroughly considering the arguments and, for the same reasons articulated above with respect to the Employer Defendants, the Court concludes that at this stage in the case Count III should properly proceed against the Plan Defendants.

### IV. CONCLUSION

Accordingly, the Court **ADOPTS** the Magistrate Judge's Recommended Decision on the Plan Defendants' Motion to Dismiss Counts I and II and the Court **ORDERS** that the Plan Defendants' Motion to Dismiss Counts I and II be, and it is hereby, **GRANTED**. The Court **DECLINES TO ADOPT** the Magistrate Judge's Recommended Decision on both the Employer Defendants Motion to Dismiss Count III and the Plan Defendants' Motions to Dismiss Count III and the Court **ORDERS** that both the Employer Defendants' Motion to Dismiss Count III and the Plan Defendants' Motions to Dismiss Count III be, and they are hereby, **DENIED**.